**James HILL, Appellant,**

**v.**

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

April 10, 1974.

Certiorari Denied by Supreme Court
Aug. 19, 1974.

Lawrence P. Leibowitz and Thomas W. Thomson, Knoxville, for appellant.

David M. Pack, Atty. Gen., R. Jackson Rose, Asst. Atty. Gen., Nashville, Ronald A. Webster, Dist. Atty. Gen., Knoxville, John W. Gill, and Lance D. Evans, Asst. Dist. Attys. Gen., Knoxville, for appellee.

## OPINION

MITCHELL, Judge.

At a joint trial, by consent of the defendant James Hill, represented by Attorney Honorable Thomas W. Thomson he was convicted in four cases. In No. 6301 for driving a motor vehicle while under license the jury fixed the punishment at a the influence of an intoxicant and the jury fixed the punishment at eleven months and 29 days in the Knox County Penal Farm and a fine of $25.00. In No. 6302 for driving a motor vehicle without a drivers fine of fifty ($50.00) dollars. In No. 6304 for carrying a pistol with intent to go armed the jury fixed the punishment at eleven months and twenty-nine days in the Knox County Penal Farm. In No. 6305 for possession of marihuana with intent to sell or deliver it the jury imposed a sentence of five years in the penitentiary.

After new trial motions were heard and overruled the Trial Judge Honorable Richard R. Ford pronounced sentences as fixed by the jury in each of the cases. In case No. 6305 for possession of a quantity of

marihuana, a controlled substance, with intent to sell and deliver it the trial judge sentenced the defendant to not less than one nor more than five years in the penitentiary.

On October 16, 1973 the defendant was found indigent and Honorable Lawrence P. Leibowitz of the Knoxville Bar was appointed by the Court to represent the defendant in his appeal.

The appeal was perfected and the following error assigned:

The verdict of the jury is contrary to the law and the evidence inasmuch as the Court erred in allowing evidence to be admitted before the jury which evidence was obtained by an unreasonable search and seizure in violation of the constitutional rights of the defendant.

The defendant did not testify in the case and offered only one witness.

According to the testimony of the witnesses for the prosecution Captain of Detectives Robert B. Chadwell and Detective William L. Pressley of the Knoxville Police Department were in their car behind the car of the defendant James Hill. On the night of February 5, 1972, Chadwell and Pressley saw the defendant driving his car and saw him run the red traffic light at McCalla and Vine Avenues. They followed him, put their spot light on him and sounded the siren. The defendant drove over to the side of the street and stopped.

The officers walked up beside the defendant's automobile and asked for his operator's license. The defendant said he did not have any. They asked him to step out of his automobile, which he did. He was staggering, and had a strong odor of intoxicants on his breath. They placed him under arrest. Detective Pressley searched the defendant and found on his person a .38 caliber loaded pistol in his pocket. The defendant was placed in the police car and the officers called a wagon and wrecker to the scene. The officer explained that when they pull an automobile off the street they "make a list of the contents of the car on the pull-in."

Captain Chadwell said they placed the defendant under arrest for driving without a drivers license, driving a motor vehicle on the street while under the influence of an intoxicant and unlawfully carrying a pistol.

After Pressley had looked over the car he handed to Chadwell a clear plastic bag containing some form of green vegetation which on testing proved to be marihuana.

The defendant told the officers he did not know the green vegetation substance was in the car.

William L. Pressley of the Detective Bureau of Knoxville Police Department testified that about 1:30 A.M., February 5, 1972, he was in company of Captain Chadwell and he saw the defendant James Hill operating a motor vehicle, he believed to be a Mercury Station Wagon. The defendant with his vehicle traveling in a westerly direction ran a red traffic light at Five Points. That after he ran through this red light they put the spot light on him and stopped him on McCalla Avenue. Captain Chadwell got out of the car first and got to the defendant and got him out of the car. Pressley searched the defendant and took a pistol off of him and placed him in the back seat of the police car. Pressley said he then went to the defendant's car to get the necessary information to make a "pull in." Pressley saw on the front seat of the defendant's car in plain view a clear plastic bag containing a substance that looked like marihuana. It was some green grassy substance in a clear plastic bag. Officer Pressley called for the narcotics officers. While they were there he inventoried the contents of the car and found some more of the substance in the glove compartment packaged up in bank bags "like bags you get pennies or change from the bank in." The substance was tested by experts and proved to be marihuana. Pressley testified in his opinion the defendant was under the influence

of an intoxicant and was drunk. Later the defendant said he had drunk three or four beers.

Thomas Allen Key made a preliminary field test of the packets of green substance found in defendant's car and sent it to the State Toxicologist where tests were made and the report returned.

Dennis C. Aiken, a toxicologist, received the substance, tested it and found it to be marihuana and returned the report.

Fred Ray Huffaker, a toxicologist, gave the defendant a breathalyzer test which showed .12, and said from his observation of the defendant, he believed the defendant was intoxicated.

William Sanders testified in behalf of the defendant that he was at a bar called the Candy Lounge where defendant had been taking pictures prior to his arrest. Defendant left the lounge before Mr. Sanders but defendant had not driven away when Mr. Sanders came out. Sanders drove in the same direction as defendant but did not catch him because a red light caught Sanders. The police came on through the red light. Sanders said he had been with defendant since about 8:30 but had never seen him take a drink at all. Sanders did not actually see defendant go through the red light because defendant had arrived there before him. Mr. Sanders was asked whether defendant was under the influence of intoxicants when he left him. Mr. Sanders answered "not to me he wasn't because he was taking pictures of everybody. A man can't take pictures on alcohol."

## ASSIGNMENT OF ERROR

In his brief the defendant has made one assignment of error in which he challenged the legality of the evidence and contends the Court erred in allowing the evidence to be admitted because it was obtained by an unreasonable search and seizure in violation of the constitutional rights of the defendant.

Officers Chadwell and Pressley saw the defendant drive his automobile on a public street in Knoxville through an intersection against a red traffic light.

Whey they required the defendant to get out of his car they discovered he was intoxicated and had no drivers license, for which they placed him under arrest and Officer Pressley on searching the defendant, found a .38 caliber pistol concealed on his person.

Chadwell and Pressley were alert, cautious, intelligent and experienced police officers. On the seat of the defendant's car Pressley saw a clear plastic bag or packet of the kind commonly used by dealers in marihuana. The bag contained a green grassy substance, green vegetation of some kind that looked like marihuana.

Without making any search of the defendant's car Officer Pressley saw this plastic bag in plain view on the seat of defendant's car. Pressley handed the plastic bag to Officer Chadwell. They recognized the plastic bag as being the kind of bag that was frequently used to package and handle marihuana, a controlled substance. Pressley then preparatory to having the defendant's car towed into police headquarters, made an inventory of the contents of the defendant's car and in the locked glove compartment they found several packets more of the substance which later proved to be marihuana.

▆▆▆▆ We think there are several grounds on which the legality of the search conducted in this case can be sustained. First, defendant was lawfully stopped for running a red light, and was found to be intoxicated. A warrantless search incident to an arrest for drunk driving has been allowed in Tennessee for the purpose of discovering alcoholic beverages. Church v. State, 206 Tenn. 336, 333 S.W.2d 799 (1960). The fact that the officer may have been making a valid search for intoxicants to support a drunk driving charge and found marihuana would not prevent them from lawfully introducing evidence of mari-

huana. Gerchman v. State, 206 Tenn. 109, 332 S.W.2d 182. Second, the automobile which defendant had been driving was about to be turned over to a wrecker crew to be towed-in. The Federal cases cited below deal with impounded vehicles and vehicles in the custody of the police and emphasize the fact that the police have some responsibility for their safekeeping and a responsibility to the public.

U. S. v. Mitchell, 458 F.2d 960 (1972) (9th CCA), was a case where the defendant was arrested for speeding in Montana while driving an out of state car. Defendant apparently drove to the police station where he was confined because he was unable to make bond.

Pursuant to standard police procedure, a patrolman was instructed to take defendant's car to an impounding lot some distance from the station. While driving the car to the impounding lot the officer saw some valuable watches laying in the front seat and a partially opened sample case, in the floor board on the passenger's side. On arriving at the impounding lot the officer started to put the watches in the case and there found a black jack and pistol.

The Court said:

"We note that there was no intent to discover evidence of crime. Rather this was responsible indeed laudable, police conduct to protect the property of the owner of a lawfully impounded car. If valuable property had been left on the seat and floor of the car, plainly visible to anyone peering through the window, the danger of theft would have been substantial. Not surprisingly, it appears that the locking and securing of impounded cars, and the removal and inventory of valuable property in plain sight, are standard procedures. They certainly should be. These procedures protect not only the interests of the property owner but also those of the city against a claim that property in the car at the time of impounding 'mysteriously disappeared' while the car was in the custody of the authorities."

\*   \*   \*   \*   \*   \*

"We note that police regulations . . . requiring a thorough search and inventory of the contents of impounded cars are frequently standard procedure. Such inventories are gaining judicial acceptance . . . United States v. Edwards, 441 F.2d 749, 755 (5th Cir. 1971).

Although inventories of personal property may extend beyond those items in plain view to a search of glove compartment and trunk, for the purpose of safeguarding private property and protecting the government against false claims, the federal courts have upheld such procedures. U. S. v. Pennington, 441 F.2d 249 (5th Cir. 1971), cert. denied 404 U.S. 854, 92 S.Ct. 97, 30 L.Ed.2d 94 (1971); U. S. v. Robbins, 424 F.2d 57 (6th Cir. 1970), cert. denied 402 U.S. 985, 91 S.Ct. 1674, 29 L.Ed.2d 151 (1971); U. S. v. Lipscomb, 435 F.2d 795 (5th Cir. 1970), cert. denied, 401 U.S. 980, 91 S.Ct. 1213, 28 L.Ed.2d 331 (1971). See also U. S. v. Boyd, 436 F.2d 1203 (5th Cir. 1971); U. S. v. Edwards, 441 F.2d 749 (5th Cir. 1971); and U. S. v. Sterling, 321 F.Supp. 1301 (E.D.La.1971)."

\*   \*   \*   \*   \*   \*

U. S. v. Beasley, 476 F.2d 164 (1973) (9th CCA), was a case where the defendant was stopped for speeding. The car defendant was driving had out of date license tags and when asked to produce the car's registration papers defendant showed the police a zerox copy of some registration papers which belonged to defendant's roommate on a different car. A record check showed that the car defendant was driving belonged to Avis-Rent-A-Car.

The highway patrolman asked defendant to accompany them to the patrol office. Patrolman Cross, one of the officers who

stopped defendant was told by a superior officer to search the car for the "parking slip" and any Avis identification papers. Cross looked in the glove compartment and under the seat where items were found which were later introduced as evidence at defendant's trial. The Cross search occurred at the station house.

The Court held the search was reasonable and said:

"Limited and reasonable measures can be taken by a law enforcement official to protect property obvious to him and left in an automobile in his custody." See Harris v. U. S., 390 U.S. 234, 236, 88 S. Ct. 992, 19 L.Ed.2d 1067 (1968); U. S. v. Mitchell, 458 F.2d 960, 961–962 (9th Cir. 1972.)

U. S. v. Blackburn, 389 F.2d 93 (1968), 6th CCA was a case where defendants were arrested at the police station and an officer was sent back to their hotel to get and return to the police station all of their belongings. Among the items found was a pistol and a notebook which were introduced at trial against the defendants.

The Court said:

"The police employed their usual procedure when a person who was staying in a hotel or motel room was arrested. In sending for the belongings of the parties there was no intention of making a search for evidence or instruments of the crime. The conduct of the police department in sending for the personal effects of the parties, itemizing them and storing them for safekeeping was entirely reasonable and logical. We find that the action of the police officers does not constitute a search.

'A search implies an examination of one's premises or person with a view to the discovery of contraband or evidence of guilt to be used in prosecution of a criminal action The term implies exploratory investigation or quest.' Haerr v. U. S., 240 F.2d 533, 535 (C.A. 5)."

■ Notwithstanding the officers made an inventory of the things found in the defendant's car for the purpose of protecting the property of the defendant we think the search of the glove compartment of the car can be justified as reasonable on the ground that Officer Pressley could have insisted that by finding the plastic bag of marihuana in plain view on the seat of defendant's car it was reasonable for him to conclude that in all probability there was other marihuana in the glove compartment. Under the facts of this case we hold that the officers' search of the glove compartment was reasonable and not in violation of the defendant's constitutional rights. Moreover as pointed out in the attorney general's excellent brief, to have surrendered the defendant's car to the wrecker company to be impounded by the city, without making an inventory of the contents of the car, would have been neglect of a duty resting upon the officer.

We are aware of the fact that the defendant did not include this assignment of error in his motion for a new trial and it should not have been considered under Wilkerson v. State, 208 Tenn. 666, 348 S. W.2d 314 and Kirby v. State, 214 Tenn. 296, 379 S.W.2d 780. But because of the possibility that the contention might be made that a constitutional question could be raised for the first time on appeal, we elected to consider the assignment.

We hold that the evidence was competent and admissible and that the evidence is not contrary to the law and that it does not preponderate against the verdict. Pryor v. State, 217 Tenn. 695, 400 S.W.2d 700.

■ We notice that the jury in fixing the punishment of the defendant for unlawfully carrying a pistol for the purpose of being armed fixed his sentence at

eleven months and 29 days in the Knox County Penal Farm but failed to impose a fine. The Statute T.C.A. § 39–4901, 1973 Supplement fixes the punishment for carrying a pistol at a fine of not less than $50.00 and not more than $1,000.00 and imprisonment in the county jail, imprisonment only in discretion of the court. The record shows the defendant pleaded guilty of carrying a pistol therefore we correct the judgment to provide for a fine of $50.00 which is the minimum fixed by the statute and is here imposed on the defendant for this offense of carrying a pistol.

Thus corrected the assignment of error is overruled and the judgment is affirmed.

We commend Court appointed counsel for diligent service rendered in behalf of the defendant.

OLIVER, and GALBREATH, JJ., concur.